BOULDIN, J.,
delivered the opinion of the. court.
It is charged in the bill in this case, that the testator of the appellants had qualified as the guardian of the female appellee, then Josephine Lincoln, as far back as the year 1848; yet he appears never to have acted in that capacity; nor is any order of court, or | guardian’s bond, exhibited with the bill or filed among the papers. The administrators of B. R. Lincoln say in their answer, that he never acted as such guardian; and Jacob Lincoln, one of them, says that he himself always acted as the guardian of Josephine Lincoln, and so regarded himself; that he was accepted and acknowledged as such *by the ward and her husband, and in that character that he, in the year 1860, actually settled his account as her g’uardian before commissioner Wart-man, and had paid to her husband through his attorney, the amount reported to be then due, by executing negotiable notes therefor at short dates.
In that settlement before commissioner Wartman, the commissioner reported that there were two claims due to the ward not included in the settlement; not from the guardian, however, but from the estates of James Hopkins and D. Lincoln, respectively; but what was the then condition of those claims' — -whether then collectible or not; and if collectible, whether solvent or not, does not appear to have been reported on that settlement.
The settlement was made on the 16th of October 1860, and the payment of the balance reported by the commissioner, was made on the 16th of November 1860, very promptly after the settlement. Ror cause satisfactory to the commissioner, the claims against Hopkins’ estate and D. Lincoln’s estate were not at that time considered properly chargeable to the guardian. Very soon thereafter the late war between the United States and the Confederate States of America broke out, and in April 1861, by an ordinance of the Virginia Convention, the stay law was enacted. It was amended and re-enacted by the Virginia Legislature in 1866, and continued in force until January 1, 1869, when it expired by limitation. B. R. Lincoln died in 1863, in the very midst of the war, without having ever acted as guardian of the female plaintiff; and this suit was brought against his administrators with the will annexed, by Stern and wife,- in April 1867, the stay law being then in full operation; and then it seems, for the first time, was the claim preferred that B. R. Lincoln had been the guardian *of Josephine, and that his administrators were bound to render his account as such.
Jacob Lincoln, one of the administrators, in his answer to the bill, expresses his surprise at the character of the suit; does not acknowledge that the said B. R. Lincoln was ever the guardian of the female plaintiff ;’ claims to have been himself the guardian, and to have been accepted as such by the ward, and subsequently by her husband; and sets out the facts and settlement above referred to. And he adds that if his brother should appear by order of court, and by giving a bond, although without acting, to have been in law the true guardian, he claims for him the settlement aforesaid, made by himself. Abraham Lincoln, the other administrator, filed a separate an *675 swer, in which he says that he has no knowledge that B. IT. Lincoln ever was guardian of Josephine Lincoln; “that he has been informed and always understood that Jacob Lincoln was guardian;” and he insists that Jacob should still be treated as such, and the estate of B. E. Lincoln relieved. Exhibits were filed with Jacob Lincoln’s answer to show his own acts as such guardian; but there is in the record no proof whatever that B. E. Lincoln ever was guardian, unless it be inferred from the following statement of commissioner Wart-man, referring to the settlement of Jacob Lincoln’s account of 1860. “Subsequent investigations disclosed the fact that Jacob Lincoln had been acting for the ward of his brother B. E. Lincoln and vice versa.” The Circuit court, on the bill, answers and exhibits, ordered that the administrators aforesaid settle before a commissioner of the court an account of the transactions of their testator B. E. Lincoln, as guardian of Josephine Lincoln: and commissioner Wart-man, under that order, reported as the account of B. E. Lincoln, the account of Jacob Lincoln settled in 1860, accompanied by the statement *above quoted, in relation to the mistake made by the two guardians.
He then reported as still due to the female plaintiff the two claims mentioned in his former report, viz: A claim on the estate of James Hopkins, dec’d, as one of the sureties of Samuel Bare, who was executor of
Christian Hoffman, dec’d, . $398 95
A claim against the estate of 13. Lincoln, dec’d, .... 694 07
Amounting together to the sum of.$1,093 02
These two claims, as we have already said, are the same mentioned in the report of 1860, but not included in the settlement. The commissioner further re- ' ports as due from the estate of Mary C. Lincoln, dec’d, to Josephine Stern, on the first of July 1863, with interest included from that date, the sum of . . 143 30
Making an aggregate of . . $1,236 32
From which he deducts a credit of 259 72
Leaving an aggregate balance of $976 60 due to Josephine Stern.
The commissioner did not decide, and evidently did not intend to decide, nor did he report, that the above balance of $976.60 was chargeable to aiid due from the estate of B. E. Lincoln, dec’d. On the contrary, he reports expressly in relation to the Hopkins claim, that he had not discovered, and was unable to say, whether that claim had ever been received by B. E. Lincoln or not; and he says nothing about the past condition of the claim, or its condition at the date of his report. There was but one witness examined, Jacob Lincoln, and he stated on oath that B. E. Lincoln had not collected that claim. In relation to the claim on D. Lincoln’s estate, *the commissioner reports that “it is or was in the hands of Smith Lofland, a former receiver of that fund:” that is to say, that it is or was under the control of a court of justice; and Jacob Lincoln swears that it had never been paid to B. E. Lincoln. The fund due from the estate of Mary C. Lincoln is reported to have accrued July 1st, 1863. It bears interest from that date, and is reported to be, not in the hands of B.E. Lincoln, but “in the hands of Jacob Lincoln, guardian of the said Mary C. Lincoln.” In all probability, and for all that appears to the contrary, B. E. Lincoln was dead when the right to that fund accrued. The exact date of his death does not appear; but it is alleged in the bill that he died in 1863; and the debt accrued in July of that year. The commissioner certainly could not have intended to charge B. E. Lincoln’s estate with a debt which accrued to the ward in the middle of the year in -which he died, and perhaps after his death ; which he certainly had no opportunity in his lifetime to collect by course of law, and which the commissioner expressly reports to be at the date of his report still “in the hands of Jacob Lincoln, guardian of the said Mary C. Lincoln, dec’d.” Yet this claim is reported by the commissioner precisely as the other claims are reported, and they are all aggregated into one balance of $976.60, which he reports to-be due to Josephine Stern, not from B. E. Lincoln, but from the persons and sources above mentioned. He says, “The true amount still due and unpaid to Josephine Lincoln, (now Stern,) from the sources and individuals hereinbe-fore named, as of date April 1st 1868, is $976.60; of which sum $895.25 is principal, and $81.35 is interest,” thus reporting the true state of the facts, and submitting the whole matter to the court on the facts reported. There was no exception and no ground of exception to the report; because, as we have seen, it *set forth, as far as it went, the real facts of the case; and the same was confirmed as a matter of course. The court then entered a decree, “that the plaintiffs, John W. Stern and wife’ ’ do recover o'f the administrators, with the will annexed, of B. F. Lincoln, to wit, Jacob Lincoln and Abraham Lincoln, the sum of $$976.60, as of date April 1st, 1868, of which amount $895.25 is principal and $81.35 is interest.” And it was further decreed and ordered, that the same defendants pay the costs. This is a personal decree against those defendants. Humphrey’s adm’rs v. West’s adm’rs, 3 Rand. 516. So that the Circuit court not only held that B. E. Lincoln was guardian of the female ap-pellee, but that his estate was bound for the entire amount reported as aforesaid to be due to Josephine Stern ; and without any account of the assets of B. F. Lincoln’s estate entered a personal decree against his administrators for that amount.
The appeal is taken from this decree, and *676 the court is of opinion that the Circuit court erred:
1st. In proceeding' against the estate of B. R. Lincoln, dec’d, without proof of his appointment and qualification as guardian; especially when it appeared, as it did, that he had not acted in that capacity.
2d. In holding his estate responsible, under the circumstances of this case, for the claims reported by the commissioner to be due to Josephine Stern, without first directing an enquiry into the condition and solvency of those claims; so as to ascertain clearly whether there had been negligence on the part of the guardian or not.
3d. In entering a personal decree against the appellants without first taking an account of the assets of their testator’s estate.
*The court is therefore of opinion, that the final decree aforesaid of the Circuit court is erroneous and should be reversed and annulled, with costs to the appellants ; and that the cause be remanded to the Circuit court to be further proceeded in, according to the principles above declared.
The decree was as follows:
The court having maturely considered the transcript of the record of the decree aforesaid and - the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the Circuit court erred, 1st, in treating B. F. Lincoln, dec’d, as guardian of the appellee Josephine Stern, without proof of his legal appointment and due qualification as such.
2d. In holding the estate of said B. R. Lincoln, dec’d, responsible for the several outstanding claims reported to be due to the said Josephine Stern, under the circumstances of this case, without first having directed an enquiry into the present and past condition thereof; whether the same were collected or collectible by said B. F. Lincoln, dec’d; and if the said claims or any of them have be'en lost, whether that loss has occurred through the default or neglect of said B. R. Lincoln.
3d. In entering a personal decree against the appellants, without having first ordered an account of the assets of their testator’s estate.
It is therefore decreed and ordered, that the said decree of the Circuit court of the 30th day of October 1868 be reversed and annulled, and that the appellees do pay to the appellants their costs by them about their appeal in this behalf expended.
It is further decreed and ordered, that this cause be remanded to the said Circuit court, to be further proceeded in according to the principles of this decree.
*A11 which is ordered to be certified to the said Circuit court of Rocking-ham county.
Decree reversed.